Barbara S. Kirkland v. Commissioner. Betty Stoddard Horn v. Commissioner.
Barbara S. Kirkland v. Commissioner
Docket Nos. 103022, 103035.
United States Tax Court
1945 Tax Ct. Memo LEXIS 294; 4 T.C.M. (CCH) 214; T.C.M. (RIA) 45066; February 12, 1945
Scott P. Crampton, Esq., and G.E.H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioners. Charles T. Reilly, Esq., for the respondent. HILL
Memorandum Findings of Fact and Opinion HILL, Judge: These consolidated proceedings involve income tax deficiencies for the year 1936 and are before us on a mandate from the Circuit Court of Appeals for the Second Circuit to determine the value of Taft Realty Corporation second mortgage bonds as of September, 1936, . Findings of Fact The petitioner and Louis E. Stoddard, Jr., are the children of Louis E. Stoddard, Sr. In 1936 their father was the owner of all of the common stock with the exception of certain qualifying shares of the Taft Realty Company. *295 That company was the owner and operator of the Taft Hotel, The Taft Annex Apartments and a theatre in the city of New Haven, Connecticut. The Realty Company had issued 6% first mortgage bonds due in 1940 and a second mortgage note bearing interest at 7 percent in the sum of $350,000 due in 1955. The bonds and the notes were secured by mortgages covering this real estate. In 1936 there were outstanding first mortgage bonds in the sum of $1,175,900 and the second mortgage note. Stoddard, Sr. had guaranteed the payment of the first mortgage bonds and note. The petitioners were the respective owner of an undivided 13/45ths interest in the second mortgage note. At the time Stoddard, Sr. and the company were in financial difficulties. The bonds and notes had been in default as to interest payments since 1933. When the holders of the first mortgage bonds commenced foreclosure proceedings, Stoddard, Sr. induced the corporation to file reorganization proceedings in the United States District Court for the District of Connecticut. In June 1936 the following plan of reorganization was approved. The Taft Realty Corporation was organized to succeed the Taft Realty Company. The holders of the fipst *296 mortgage bonds exchanged their bonds for new bonds issued by the new corporation and secured by the same assets bearing interest at the rate of 3 percent. The new bonds were due in 1951. In addition to the new bonds they received stock in the Taft Realty Corporation at the rate of 10 shares for each $1,000 bond. The stock so distributed amounted to 5/12ths of the authorized shares. The remaining 7/12ths of the stock amounting to 16,463 shares were to be sold to Stoddard, Sr., or his nominee, for $150,000 in cash. In return Stoddard, Sr. was to be released from his guarantee of the first mortgage bonds. Stoddard, Sr. did not have the funds to buy this stock and the money was furnished by his three children and a friend. The petitioners and their brother surrendered their interests in the second mortgage note and received second mortgage bonds of the new corporation in the face amount of $43,333.34. The old note and mortgages were cancelled and Stoddard, Sr.'s liability extinguished. In September 1936 petitioners charged off their interests in the old second mortgage note as worthless and entered the new bonds on their books at no cost. In filing their respective income tax returns *297 for that year petitioners deducted as a bad debt the cost of their interest in the second mortgage note. In addition to other adjustments not now material, respondent determined that the exchange was pursuant to a nontaxable reorganization and the loss was disallowed. The taxpayers petitioned the United States Board of Tax Appeals for a review of his determination. In a Memorandum Opinion entered November 19, 1942, the Commissioner's contention was sustained. The Board of Tax Appeals held that the second mortgage bonds acquired by petitioners were received in exchange for their interests in the old second mortgage note in a nontaxable reorganization. Under such holding the value of the second mortgage bonds was not material and was not found. The cases were appealed to the Circuit Court of Appeals for the Second Circuit. That court reversed these decisions holding that there was no reorganization within the meaning of the Revenue Act of 1936 and that the loss on the transaction must be recognized for tax purposes. It further held that the petitioners' interest in the second mortgage note was a capital asset and that any loss would be limited by section 117 (d) of the Revenue Act of *298 1936. The court further stated that since some loss to petitioners was apparent, it became necessary to determine the value of the second mortgage bonds in September 1936. The cases were remanded to this court to determine that value. The parties have agreed that this value may be determined from the evidence already in the record and have filed statements in support of their positions. The Taft Realty Corporation second mortgage bonds had no value in 1936. Opinion The respondent contends that the second mortgage bonds were worth at least 10 cents on the dollar. Petitioners say the bonds were worthless. The respondent's theory seems to be that the sale of 16,463 shares of Taft Realty Corporation stock for $150,000 showed a value for that stock of at least $9 a share. He argues that the second mortgage bonds must be worth at least 10 cents on the dollar because of their lien against the real estate. In support of his position respondent cites the fact that interest was paid on these bonds in 1937, 1938 and 1939. At the outset petitioners contend that the sale of the stock for $150,000 is not a fair test of the value of the stock. They argue that the purchase of this stock was *299 in reality a gift by the petitioners in order to cancel Stoddard Sr.'s guarantee of the first mortgage bonds. The evidence supports petitioners' theory in this respect. The office manager for petitioners' business operations testified that the children put up the money to save the family name and to avoid additional judgments against Stoddard, Sr. There can be little doubt that strangers would not have invested $150,000 in this corporation in return for its common stock. It is obvious that some other motive prompted petitioners to put up the money. It could not have been from any desire to make a good investment. The sale is not indicative of the true value of this stock and should not be used as a yardstick to measure the value of the second mortgage bonds. Four witnesses testified for the petitioners; two were real estate men who, at petitioners' request, had made an appraisal of the properties owned by the Taft Realty Corporation. These men gave as their opinion that the top value of the property which secured the second mortgage bonds was $750,000, which amount included the $150,000 realized from the sale of the stock to Stoddard, Sr. The respondent offered no evidence as to *300 the value of the second mortgage bonds or as to the value of the properties. The other witnesses for petitioners were dealers in securities doing business in New Haven and testified that in September, 1936, the second mortgage bonds had no value. Each of them was familiar with these securities and was in business in New Haven at the time. There were outstanding first mortgage bonds totaling $1,175,900. The sales price of these bonds in September, 1936, immediately prior to the exchange, was $31.50. Immediately after the exchange these bonds sold for $32. Thus, the market value of the bonds which were a first lien on the properties was approximately $376,000. The lower interest return on the new bonds did not affect the sales price. No interest had been paid on the second mortgage note or the first mortgage bonds for a period of over three years. The hotel which was the principal source of income was in shabby condition and poorly managed. It apparently relied on its monopoly in New Haven and made no attempt to cultivate good will from the traveling public. The fact that interest was paid in 1937 does not affect our opinion that the second mortgage bonds were worthless in September, *301 1936. The cumulative effect of the testimony of the real estate men and the securities dealers, the sales price of the first mortgage bonds and the reputation of the hotel at the time is convincing. It permits no alternative but a finding that the second mortgage bonds received by petitioners in exchange for their interest in the second mortgage note were worthless. Decisions will be entered under Rule 50.